**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DAVID RUSSELL,**

                                                        **Petitioner,**

                    **v.**                                                        9:02-CV-0940
                                                                                        (LEK)(DEP)

**THOMAS RICKS, Superintendent,**
**Upstate Correctional Facility,**
**GLENN GOORD, DOCS Commissioner,**

                                                        **Respondents.**
_____

**APPEARANCES:**                    **OF COUNSEL:**


**For the Petitioner:**

**DAVID RUSSELL**
Petitioner, _pro se_
91-A-4511
Southport Correctional Facility
PO Box 2000
Pine City, NY 14871-2000


**For the Respondents:**

**HON. ELIOT SPITZER**                    **MICHAEL G. McCARTIN, Esq.**
Office of Attorney General                    Ass't Attorney General
State of New York
The Capitol
Albany, NY 12224


**LAWRENCE E. KAHN**
**UNITED STATES DISTRICT JUDGE**

### MEMORANDUM-DECISION and ORDER

**I.**        **Background**

        **A.**        **State Court Proceedings**

        The state court records provided to the Court reflect that on October 10, 1999, corrections

officer ("C.O.") B. Smithers of the Ogdensburg correctional facility received a call from a fellow

corrections officer at that prison, L. Palmer, who had recently discovered "quite a good blood trail" on the floor of a unit within that facility. *See* Tier III Disciplinary Hearing Transcript (10/13/99) (reproduced in Dkt. No. 20, Exh. 67) ("Tier III Tr.") at p. 11. Upon arriving at the location where the blood had been discovered, a fellow inmate at that facility, Jeffrey Edwards, was observed to be "bleeding quite heavily." *Id.*[1] C.O. Smithers then began searching common areas around that area and discovered that petitioner, *pro se* David Russell ("Petitioner" or "Russell") had wrapped one of the fingers on his right hand with tissue paper in an apparent effort to stop that finger from bleeding. Tier III Tr. at p. 11. C.O. Smithers then directed a fellow corrections officer to pat-frisk Russell. *Id.* Before conducting that frisk, the corrections officer asked Russell whether he had "anything on him," to which Russell responded "yes." *Id.* Russell then proceeded to remove a lid from the top of a can from his pocket. *Id.* When questioned about inmate Edwards' injury, Russell denied being involved in any altercation with Edwards and informed the corrections officer that he had cut his finger on the can lid while using that lid to cut food he was preparing to eat. Tier III Tr. at p. 12.

As a result of the foregoing, Russell was issued three separate misbehavior reports. The first such report charged Russell with assaulting another inmate, in violation of Inmate Rule No. 100.10. *See* Dkt. No. 20, Exh. 69 at p. 23 ("Initial Misbehavior Report"). Around that same time, Russell was also issued a misbehavior report authored by corrections officer L. Palmer that

---

[1]      When Edwards was questioned about his injury, he apparently informed corrections officers that just before his injury, he slipped on the floor and as he was falling, his head hit a mop ringer, thereby causing his head injury. Tier III Tr. at p. 15. A nurse at the facility subsequently advised C.O. Smithers that the injury sustained by inmate Edwards was consistent with having been caused by a sharp metal object such as the lid from a can. Tier III Tr. at p. 12.

charged Russell with unauthorized sparring / disorderly conduct and failure to promptly report an injury, in violation of Inmate Rule Nos. 100.15 and 118.23, respectively.  *See* Dkt. No. 20, Exh. 68 at p. 26 ("Second Misbehavior Report").  Later that same day, Russell received a third misbehavior report that charged him with possessing both a weapon and an altered item, in violation of Inmate Rule Nos. 113.10 and 113.11, respectively.  *See* Dkt. No. 20, Exh. 68 at p. 27 ("Third Misbehavior Report").

Beginning on October 13, 1999, Hearing Officer Vincent Jones of the Ogdensburg correctional facility presided over a disciplinary hearing relating to the foregoing misbehavior reports.  *See* Tier III Tr.  At that proceeding, Hearing Officer Jones noted that prior to such hearing, Russell had requested that two inmates testify on his behalf; inmate Williams and inmate Parker.  Tier III Tr. at p. 1.  Williams had advised Hearing Officer Jones that Williams "kn[e]w nothing about this incident because [he] was sleeping" and therefore refused to testify at the hearing.  Tier III Tr. at p. 6.  Inmate Parker similarly refused to testify on Russell's behalf, declaring that he "kn[e]w nothing about this incident."  Tier III Tr. at p. 7.[2]

Following that hearing, Hearing Officer Jones found Russell guilty of all charges contained in the misbehavior reports.  Tier III Tr. at p. 82.  As a result of that finding, Hearing Officer Jones, *inter alia*, ordered that Russell be placed in the prison's special housing unit for 180 days, directed that Russell be deprived of various privileges in the prison and recommended that Russell be deprived of six months accumulated good time credits.  Tier III Tr. at p. 82; *see also* Dkt. No. 20, Exh. 71 at pp. 76-78.

---

[2]        Upon learning that those witnesses would not testify on Russell's behalf, Petitioner stated:  "They cool.  They're like me, they don't want to get involved in this," *see* Tier III Tr. at p. 7, and acknowledged their right to refuse to testify.  Tier III Tr. at p. 8.

Russell filed an administrative appeal of Hearing Officer Jones' finding of guilt with Donald Selsky, the Director of Special Housing and Inmate Disciplinary Programs at the Department of Correctional Services ("DOCS").  *See* Am. Pet. (Dkt. No. 6) at p. 9(b).  In addressing that appeal, Selsky affirmed Hearing Officer Jones' conclusions as to Russell's guilt of the charges alleged in the Second and Third Misbehavior Reports, however he concluded that the finding that Russell was guilty of assault was erroneous and accordingly dismissed the determination of guilt relating to the Initial Misbehavior Report.  Selsky additionally adopted in full the penalties proposed by Hearing Officer Jones.  *See* Memorandum of Donald Selsky (12/29/99) (reproduced in Dkt. No. 20, Exh. 69 at p. 40); *see also* Dkt. No. 20, Exh. 71 at p. 79.

On or about March 18, 2000, Russell filed an action pursuant to Article 78 of New York's Civil Practice Law & Rules challenging Selsky's decision.  *See* Dkt. No. 20, Exh. 68 ("Article 78 Petition").  By Decision and Order dated June 15, 2000, Acting St. Lawrence County Supreme Court Justice S. Peter Feldstein transferred Russell's application to the New York State Supreme Court, Appellate Division, Third Department.  *See* Dkt. No. 20, Exh. 70 at p. 7.  In its Memorandum and Judgment dated May 31, 2001, the Appellate Division denied and dismissed Russell's Article 78 Petition.  *See Russell v. Selsky*, 283 A.D.2d 890 (3d Dept. 2001).  On December 13, 2001, New York's Court of Appeals denied Russell's application for leave to appeal that decision.  *Russell v. Selsky*, 97 N.Y.2d 668 (2001), *reh'g denied*, 97 N.Y.2d 726 (2002).

### B.    This Proceeding

Petitioner commenced this habeas action challenging the loss of six months of good time

4

credits on July 18, 2002 through a petition he filed pursuant to 28 U.S.C. § 2254.[3]  *See* Dkt. No.

1.  Since that pleading contained contradictory information and did not clearly state the legal

basis for his petition, by order filed on July 30, 2002 this Court directed Russell to file an

amended pleading if he wished to proceed with this action.  Dkt. No. 4.  On August 7, 2002,

Russell filed an amended habeas petition pursuant to this Court's directive.  Dkt. No. 6 ("Am.

Pet.").

In his amended pleading, Russell alleges that:  i) he was "punished for doing what the

law/correction facility allowed him to do;" ii) he was never given any notice that he could not

leave the kitchen area of the facility with the subject can lid; iii) he was wrongfully denied his

right to call witnesses at the disciplinary hearing; iv) he was issued "the wrong disciplinary

charge;" v) Hearing Officer Jones' finding of guilt was not based on substantial evidence; vi)

newly discovered evidence establishes that Russell is not guilty of the charges contained in the

misbehavior reports; and vii) Hearing Officer Jones was biased against Russell.  *See* Am. Pet. at

¶ 13.

The Respondents thereafter filed a motion to dismiss the amended petition, Dkt. No. 11,

which was opposed by Russell.  Dkt. No. 13.  In his Report-Recommendation filed August 26,

2003, Magistrate Judge David E. Peebles recommended that such motion to dismiss be denied.

Dkt. No. 17 ("Report-Recommendation").  By Order filed September 29, 2003, this Court

---

[3]        "Because an action for restoration of good-time credits in effect demands immediate release or a shorter period of detention, it attacks the very duration of ... physical confinement, and thus lies at the core of habeas corpus."  *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (internal quotations and citation omitted).  Petitioner therefore may properly seek review of the Third Department's denial of his Article 78 Petition through the present habeas proceeding.

adopted Magistrate Judge Peebles' Report-Recommendation, denied the dismissal motion and

directed Respondents to file his response to Russell's pleading.  Dkt. No. 19.  On October 6,

2003, Respondents filed an answer and memorandum of law in opposition to Russell's amended

petition.  *See* Dkt. Nos. 20-21.  In his response, the Attorney General argues that Russell is barred

from obtaining the relief he seeks as to several of his habeas claims under the doctrine of

collateral estoppel, and that the remaining claims raised by Russell are without merit.  *See*

Respondents' Memorandum of Law in Opposition to Russell's Amended Habeas Petition (Dkt.

No. 21) ("Resp. Mem.").  On October 16, 2003, Petitioner filed a traverse in further support of

his pleading.  Dkt. No. 22 ("Traverse").

## II.   Discussion

### A.   Collateral Estoppel

In support of his claim that Petitioner is collaterally estopped from asserting certain of the

theories he has raised in his amended petition, Respondents note that subsequent to the

administrative proceedings challenged by the present action, Russell pleaded guilty in St.

Lawrence County Court to the crime of promoting prison contraband in the first degree.  *See*

Resp. Mem. at pp. 7-8; *see also* Transcript of Guilty Plea in *People v. Russell*, No. I-99-305

(June 29, 2000 St. Lawrence Cty. Ct.) (reproduced in Dkt. No. 25) ("Plea Tr.").  Respondents

argue that in that criminal proceeding, Russell admitted to possessing a prohibited item, and that

until that criminal conviction is reversed, he is precluded from properly asserting the claims he

raises in his first, second, fourth and sixth grounds for relief.  *See* Resp. Mem. at pp. 7-11.

In his traverse, Russell argues that because this petition challenges an administrative

determination separate and apart from his criminal conviction, this Court should find that he is

6

not collaterally estopped from raising any of the claims asserted in his amended habeas petition. Traverse at pp. 3-7.

Critical in resolving Respondents' claim that Russell is collaterally estopped from raising certain of his habeas claims in this matter is a review of the admissions made by Russell in the criminal action that arose out of the same incident that resulted in Russell receiving the three misbehavior reports that are germane to this action.

In that criminal proceeding, at which Russell pleaded guilty to the crime of promoting prison contraband in the first degree, *see* Plea Tr. at p. 11,[4] Russell admitted that on October 10, 1999, while confined at the Ogdensburg correctional facility, he "had in [his] possession a folded-over [can top] lid 3 inches in diameter." Plea Tr. at p. 13. Russell also admitted that "it was contrary to the rules of the correctional facility to have such a can top." *Id.*

This Court now considers Respondents' argument that Petitioner is precluded from seeking federal habeas intervention based upon the theories he asserts in grounds one, two, four and six of his amended petition. *See* Resp. Mem. at pp. 7-11.

### 1.   **Ground One**

---

[4]   As Magistrate Judge David E. Peebles correctly noted in the Report-Recommendation he issued earlier in this case, in New York, an individual is guilty of promoting prison contraband in the first degree when:

> 1. He knowingly and unlawfully introduces any dangerous contraband into a detention facility; or
> 2. Being a person confined in a detention facility, he knowingly and unlawfully makes, obtains or possesses any dangerous contraband.

*See* Report-Recommendation at p. 14; *see also* N.Y. Penal L. § 205.25. "Dangerous contraband" has in turn been statutorily defined as "contraband which is capable of such use as may endanger the safety or security of a detention facility or any person therein." *See* Report-Recommendation at pp. 14-15; *see also* N.Y. Penal Law § 205.00[4].

In his first ground, Russell argues that the administrative determination of guilt "punished [Russell] for doing what the law / correction facility allowed him to do."  Am. Pet., Ground One. In support of this claim, Russell argues:

> the petitioner was allowed by the correctional facility superintendent and his designee ... to use a folded can top as a cutter to chop food.  This now become [*sic*] an approved item by the corrections officials allowing the use of the can top – no signs were posted stating any prohibition associated with the use of the can top e.g., not to leave a certain area with the can top etc.  The appellate [*sic*] / petitioner was later punished for having a folded can top by being issued a misbehavior report and the subsequent penalties sought to be overturned in this petition.

Am. Pet., Ground One.[5]

In New York, the doctrine of collateral estoppel forecloses a second litigation of an issue where:  1) the identical issue was actually litigated and decided in the previous proceeding; 2) the party had a full and fair opportunity to litigate the issue in that prior proceeding; and 3) the resolution of such issue was necessary to support the final judgment issued on the merits in the prior proceeding.  *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998) (internal quotations and citation omitted); *see also* Report-Recommendation at p. 14.

At the plea hearing relating to the criminal charge of promoting prison contraband in the first degree, Russell admitted that "it was contrary to the rules of the correctional facility to have ... a can top."  Plea Tr. at p. 13.  Resolution of that issue against Russell, which is identical to his habeas claim that he was punished for doing what he was permitted to do at that facility, *see* Am. Pet., Ground One, was necessary to support the criminal charge against Russell.  Furthermore,

---

[5]      Although not clearly stated by Petitioner in his amended petition, this ground necessarily only relates to the charges contained in the Third Misbehavior Report.

this Court's review of the transcript of that disciplinary hearing, particularly when viewed in combination with the Appellate Division's determination that Russell's plea was knowing, intelligent and voluntary, *see People v. Russell*, 286 A.D.2d 825, 826-27 (3d Dept. 2001),[6] establishes that Russell had a full and fair opportunity to litigate this issue in the state courts. Therefore, this Court finds that Russell is collaterally estopped from raising his first ground for relief herein.

### 2.   Ground Two

In his second ground, Russell argues that the administrative findings of guilt are improper due to the DOCS' "failure to warn" Petitioner that the disputed conduct was prohibited.  Am. Pet., Ground Two.  Specifically, Russell claims that he:

> was allowed to take a folded can top and use it to cut food[.]  [N]o signs were posted or memorandum issued warning the petitioner, or the rest of the prison population[,] of any prohibition in association with the use of the can top[,] e.g., not to leave the cooking area with the item.  Petitioner was unaware of any prohibition in association with its use as no signs or memor[an]d[a] were posted before he was subsequently penalize[d] with loss of good time, and punitive segregation....

---

[6]   The Court acknowledges that Russell is currently challenging the validity of his criminal conviction through a habeas petition he has commenced in this District.  *See Russell v. Goord*, No. 9:02-CV-1026 (N.D.N.Y.).  However, as Magistrate Judge Peebles sagely noted, "absent its reversal, Petitioner's conviction should preclude him from relitigating matters directly growing out of" that criminal matter.  *See* Report-Recommendation at p. 14; *see, e.g.*, *Daniels v. United States*, 532 U.S. 374, 380-82 (2001) (state court convictions are conclusively presumed valid); *United States ex rel. Rogalski v. Jackson*, 58 F.Supp. 218, 220 (N.D.N.Y.) ("[a] judgment attacked collaterally by a writ of habeas corpus is presumed valid"), *aff'd*, 146 F.2d 251 (2d Cir. 1944).

Should Petitioner ultimately prevail on the merits of that habeas petition, and thereby call into question the vitality of his conviction on the charge of promoting prison contraband in the first degree, he could move for reconsideration of this Memorandum-Decision and Order under Federal Rule of Civil Procedure 60(b)(6), or, alternatively, rely upon such reversal in support of any appeal of this Memorandum-Decision and Order.

Am. Pet., Ground Two.

The Second Circuit has clearly instructed federal district courts to construe *pro se* pleadings liberally and interpret them "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Williams v. Kullman*, 722 F.2d 1048, 1050-51 (2d Cir. 1983); *Bido v. Miller*, No. 00 CV 8462, 2005 WL 1241898, at *1 (S.D.N.Y. May 24, 2005) (citations omitted).  Construed liberally, Russell's second ground for relief appears to assert a void-for-vagueness challenge relating to the prison regulations that charged him with possessing a weapon and possessing an altered item.[7] *E.g. United States v. Dickey*, 736 F.2d 571, 588 n.7 (10th Cir. 1984) (claim that statute "fail[ed] to adequately warn an individual of the criminal consequences of his action" interpreted as "void for vagueness" challenge).

Although Respondents argue that Russell is collaterally estopped from raising this challenge to the hearing officer's determination, *see* Resp. Mem. at pp. 7-11, the Court notes that the Second Circuit has clearly held that "a guilty plea ... does not waive the right to contest the constitutionality of the statute that is the basis for a conviction."  *Mercado v. Rockefeller*, 502 F.2d 666, 672 (2d Cir. 1974) (internal quotation and citation omitted).  Since, liberally construed, Russell's second ground for relief may be properly considered a constitutional challenge to the validity of the regulations he was found guilty of violating, this Court declines to find that Russell is collaterally estopped from asserting such challenge in the present habeas action. *E.g.*,

---

[7]       Even a liberal reading of this ground fails to reveal a vagueness challenge to the prison rules that prohibit inmates from engaging in unauthorized sparring / disorderly conduct, or which require inmates to promptly report injuries to the authorities.  Thus, as with Petitioner's first ground for relief, the second claim in Russell's amended pleading is necessarily limited to the charges contained in the Third Misbehavior Report.

*Mercado*, 502 F.2d at 672 ("guilty plea [did not] ... preclude[] [petitioner] from presenting her

void for vagueness claim to the New York Court of Appeals") (internal quotation omitted).

>    3.    **Ground Four**

In his fourth ground for relief, Russell claims that the Third Misbehavior Report accused

Russell of violating "the wrong disciplinary charge."   Am. Pet., Ground Four.   Specifically,

Russell argues that such report, which charged him with possessing both an altered item and a

weapon, was improper because Russell was allowed to possess the folded can top lid to assist

him in cooking.   Am. Pet., Ground Four.   Petitioner argues that he "never possessed an altered

item or weapon, but rather an authorized item in an unauthorized area," and that therefore the

Third Misbehavior Report was "wrong."   *Id.*[8]

>    a.    **Weapons Possession**

The first charge in the Third Misbehavior Report charged Russell with possessing a

weapon, contrary to Inmate Rule 113.10.   *See* Third Misbehavior Report.   That rule provides

that:

> An inmate shall not make, possess, sell or exchange any item that
> may be classified as a weapon or dangerous instrument by
> description, use or appearance.   A dangerous instrument is any
> instrument, article or substance which, under the circumstances in
> which it is used, attempted to be used or threatened to be used, is
> readily capable of causing bodily harm.

7 N.Y.C.R.R. § 270.2[B][14][i].

In Russell's criminal trial, he admitted to possessing an altered can top.   *See* Plea Tr. at p.

---

[8]    Russell suggests that the misbehavior report should have charged him with
possessing an authorized item in an unauthorized area, contrary to Inmate Rule No. 113.22.
*See* Am. Pet., Ground Four.

13.  In this context, both district courts within this Circuit, as well as New York appellate courts, have uniformly held that can tops constitute "weapons."  *See Dodge v. County of Orange*, 282 F. Supp. 2d 41, 68-69 (S.D.N.Y. 2003) (listing "bent can lid" as one of many weapons found in inmate's possession); *Woods v. Steinhilber*, No. 97-CV-787, 1999 WL 166821, at *1 (W.D.N.Y. Jan. 11, 1999) (noting that inmate had used can top as a weapon); *McCorkle v. Selsky*, 264 A.D.2d 890, 890 (3d Dept. 1999) (can top in inmate's possession constituted a weapon); *Robinson v. Herbert*, 252 A.D.2d 986, 986 (4th Dept. 1998) (inmate's possession of "jagged can lid" established violation of Inmate Rule 113.10); *People v. Jones*, 185 A.D.2d 470, 471 (3d Dept. 1992) (altered tuna can lid properly considered a weapon); *see also* Report-Recommendation at pp. 14-15.  Accordingly, this Court finds that Russell's admissions at his criminal trial that he possessed the can top lid, Plea Tr. at p. 13 (which were critical to establishing his criminal liability of the prison contraband charge) collaterally estops him from now asserting that the misbehavior report charging him with possessing a weapon was "wrong."

### b.      Possessing an Altered Item

Turning to the other charge contained in the Third Misbehavior Report, the Court notes that such charge alleged that Russell had violated Inmate Rule 113.11, which prohibits inmates from "possess[ing] any authorized item that has been altered in any manner so as to change its original intent and/or purpose."  *See* 7 N.Y.C.R.R. § 270.2[B][14][ii].

At his plea colloquy, Russell admitted to having in his possession "a folded-over lid 3 inches in diameter, can top."  Plea Tr. at p. 13.  In this action, Petitioner has declared under penalty of perjury that he was using the folded can top lid "as a cutter to chop food."  Am. Pet.,

Ground One.[9]

Since Russell has admitted that he possessed a can top that was altered in such a manner so as to change its original intent or purpose – and that admission was necessary to support his conviction on the prison contraband charge – he is also collaterally estopped from challenging the propriety of the charge accusing him of possessing an altered item.

### 4.   **Ground Six**

In his sixth ground, Russell argues that "new evidence supports petitioner['s] innocence of the charge."[10]  Am. Pet., Ground Six.  In support of that claim, Russell refers the Court to the testimony provided by corrections officer Palmer at Russell's criminal trial (before he entered his guilty plea), as well as a response to a request for admissions the Attorney General's office served on Russell in connection with a civil action he filed in this District, *Russell v. O'Keefe et al.*, No. 00-CV-1517 (N.D.N.Y.).  *See* Am. Pet. at Exhs. J, K.  Respondents argue that Russell is collaterally estopped from asserting his sixth ground for relief.  *See* Resp. Mem. at pp. 7-11.

In this ground, Petitioner claims that corrections officer Palmer's trial testimony establishes that he performed no investigation prior to issuing the Second Misbehavior Report, and that such evidence, which Petitioner apparently only recently discovered, entitles him to habeas intervention.  *See* Am. Pet., Ground Six; *see also* Trial Tr. at pp. 110-11.  Although

---

[9]      Prior to entering his guilty plea to the first degree promoting prison contraband charge, Russell's criminal trial on that charge had commenced.  In his opening statement at that trial, Russell admitted that he had been using that can top in preparing his food just before he was questioned by corrections officers about the can lid.  *See* Transcript of Trial of David Russell (6/27/00) ("Trial Tr.") at pp. 96-97.

[10]      Russell has not specifically identified as to which of the four charges challenged by this action this claim is addressed.

13

Respondents argue that Russell is collaterally estopped from raising this claim in this proceeding, the Court notes that the charges in the Second Misbehavior Report – which alleged that Russell had:  i) engaged in unauthorized sparring / disorderly conduct and ii) failed to promptly report his injury – were never addressed at the plea colloquy.  *See* Plea Tr.  Since resolution of the issues raised in the Second Misbehavior Report was ***not*** necessary to support the final judgment issued in the criminal matter, Russell is not collaterally estopped from asserting this aspect of his sixth ground for relief.

Next, the Court notes that the Attorney General's answers to Russell's requests for admissions were not provided to Petitioner until December 18, 2001 – a date after the date on which the Third Department denied and dismissed Russell's Article 78 petition.  *Compare* Dkt. No. 26 *with Russell*, 283 A.D.2d at 890.  Thus, Petitioner is not collaterally estopped from claiming that such evidence entitles him to habeas relief herein.

In sum, this Court agrees with Respondents that Russell is collaterally estopped from asserting his first and fourth grounds for relief herein, and these claims are therefore dismissed on this basis.  However, this Court concludes that Petitioner is not collaterally estopped from raising his second or sixth claims seeking federal habeas intervention.  Therefore, the Court will consider those two claims, along with the remaining grounds asserted in Petitioner's amended pleading, in determining whether Russell is entitled to the relief he seeks.

### B.    <u>Remaining Claims</u>

#### 1.    <u>Standard of Review</u>

Enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") brought about significant new limitations upon the power of a federal court to grant habeas relief

to a state prisoner under 28 U.S.C. § 2254.  In providing federal district courts with guidance

concerning application of this new deferential standard, the Second Circuit has recently noted in

*Rodriguez v. Miller*, 439 F.3d 68 (2d Cir. 2006) that:

> a federal court may award habeas corpus relief with respect to a
> claim adjudicated on the merits in state court only if the
> adjudication resulted in an outcome that: (1) was "contrary to, or
> involved an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the United
> States"; or (2) was "based on an unreasonable determination of the
> facts in light of the evidence presented in the State court
> proceeding."

*Rodriguez*, 439 F.3d at 73 (quoting 28 U.S.C. § 2254(d)); *see also DeBerry v. Portuondo*, 403

F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v.

LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).  The AEDPA also requires that in any such proceeding

"a determination of a factual issue made by a State court shall be presumed to be correct [and

t]he applicant shall have the burden of rebutting the presumption of correctness ... by clear and

convincing evidence."  28 U.S.C. § 2254(e)(1); *see also DeBerry*, 403 F.3d at 66; *Boyette*, 246

F.3d at 88 (quoting 28 U.S.C. § 2254(e)(1)) (internal quotations omitted).

    The Second Circuit has provided additional guidance concerning application of this test,

noting that:

> [u]nder AEDPA, we ask three questions to determine whether a
> federal court can grant habeas relief: 1) Was the principle of
> Supreme Court case law relied upon in the habeas petition "clearly
> established" when the state court ruled? 2) If so, was the state
> court's decision "contrary to" that established Supreme Court
> precedent? 3) If not, did the state court's decision constitute an
> "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100,

15

108-09 (2d Cir. 2000)); *see also Encarnacion v. McGinnis,* No. 02-CV-6380, 2005 WL 3018728, at *3 (W.D.N.Y. Oct. 26, 2005) (AEDPA deference applied to habeas claim challenging findings of hearing officer following disciplinary hearing).

In *Sellan v. Kuhlman*, 261 F.3d 303, 309-10 (2d Cir. 2001), the Second Circuit answered the question of whether deference under section 2254(d) is mandated if a state court decides a case without citing to federal law or otherwise making reference to a federal constitutional claim. Specifically, that court held that deference is required if the claim was presented to the state court and there was an adjudication on the merits, even though the state court's decision lacks explicit reference to the federal claim or to federal case law. *Sellan*, 261 F.3d at 311-12. As the Second Circuit explained, the plain meaning of § 2254(d)(1) dictates that:

> [f]or the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim – ***even if the state court does not explicitly refer to either the federal claim or to relevant federal case law***.

*Sellan*, 261 F.3d at 312 (emphasis added), *see also Ryan v. Miller*, 303 F.3d 231, 246 (2d Cir. 2002). When a state court's decision has been decided "on the merits," that decision is "contrary to" established Supreme Court precedent if it applies a rule that contradicts Supreme Court precedent, or decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A federal court engaged in habeas review is to determine not whether the state court's determination was merely incorrect or erroneous, but instead whether it was "objectively unreasonable." *Williams*, 529

16

U.S. at 409; *see also Sellan*, 261 F.3d at 315.  The Second Circuit has noted that this inquiry admits of "[s]ome increment of incorrectness beyond error," though "the increment need not be great[.]" *Francis S.*, 221 F.3d at 111.

### 2.   <u>**Substance of Remaining Claims**</u>

#### a.   <u>**Ground Two**</u>

As noted above, Russell argues in his second ground for relief that his right to due process was violated during the state court proceedings below because no signs were posted, or memoranda issued, which advised inmates at the Ogdensburg correctional facility that they could not exit the cooking area of that prison with a folded can top.  Am. Pet., Ground Two.  Since Russell was "unaware of any prohibition" regarding his leaving the kitchen area of that facility with the can top in his possession, Russell argues that Hearing Officer Jones' finding of guilt as to the charges alleged in the Third Misbehavior Report must be reversed.

#### i. <u>Clearly Established Supreme Court Precedent</u>

"It is settled that, as a matter of due process, a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute . . . is void for vagueness." *Colautti v. Franklin*, 439 U.S. 379, 390 (1979) (internal quotations and citations omitted); *see also Connally v. General Constr. Co.*, 269 U.S. 385, 391 (1926).  This void-for-vagueness doctrine mandates that penal statutes define criminal offenses with "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  *Kolender v. Lawson*, 461 U.S. 352, 357-358 (1983).  A determination of whether a statute provides adequate warning to potential violators, however, must be made "on the basis of the statute itself and the other

pertinent law, rather than on the basis of an *ad hoc* appraisal of the subjective expectations of particular defendants." *Bouie v. City of Columbia*, 378 U.S. 347, 355-56 n.5 (1964).

### ii.      Contrary To, or Unreasonable Application Of, Clearly Established Supreme Court Precedent

Russell asserted in his Article 78 Petition that the hearing officer's finding of guilt was erroneous because, *inter alia*, a can top is not listed as a weapon under New York's Penal law, and the prosecution of an individual for violating a prison regulation is only permissible where "clear and unambiguous regulations" place "reasonable persons ... on notice that their conduct is criminally punishable." Article 78 Petition at pp. 19-20.  The Appellate Division found this claim to be "without merit." *Russell*, 283 A.D.2d at 891.[11]  This Court must therefore consider whether that determination is either contrary to, or represents an unreasonable application of, the Supreme Court precedent referenced above.

The first charge in the Third Misbehavior Report claimed that Russell possessed a weapon, contrary to Inmate Rule 113.10.  *See* Third Misbehavior Report.  As noted above, that rule prohibits inmates from possessing "any item that may be classified as a weapon or dangerous instrument by description, use or appearance."

The Second Circuit has opined that a prison regulation is impermissibly vague when:

>        persons of common intelligence must necessarily guess at its

---

[11]      Although the Third Department denied this aspect of Russell's Article 78 petition without referring explicitly to his vagueness challenge, that court nevertheless indicated that it had "considered petitioner's remaining contentions and [found] them to be without merit." *Russell*, 283 A.D.2d at 891.  Since there is no basis for believing that the Appellate Division rejected this claim on non-substantive grounds, the adjudication was "on the merits" and must therefore be reviewed under the deferential standards prescribed in 28 U.S.C. § 2254(d)(1).  *See Sellan*, 261 F.3d at 311.

> meaning and differ as to its application, or if it fails to give a
> person of ordinary intelligence fair notice of conduct proscribed or
> required by the regulation, and encourages arbitrary and erratic
> behavior on the part of officials charged with enforcing the rule.

*See Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995); *see also Trammell v. Mantello*, No.

90-CV-382, 1996 WL 863518, at *8 (W.D.N.Y. June 10, 1996), *appeal dismissed*, *Trammell v.*

*Mantello, et al.*, No. 96-2545 (2d Cir. Aug. 23, 1996) (citing *Giano*, 54 F.3d at 1057).

Turning to the vagueness challenge *sub judice*, this Court finds that a person of ordinary

intelligence could readily understand that a can top such as the one found in Russell's possession

(which he himself admits he used to facilitate the cutting of food and which he claims caused an

accidental injury to his own finger (*see* Tier III Tr. at p. 5)) could be properly classified as a

"weapon or dangerous instrument" proscribed under 7 N.Y.C.R.R. § 270.2[B][14][i].  Thus,

Russell's vagueness challenge to this finding of guilt must fail.

The Third Misbehavior Report also charged Russell with possessing an altered item,

contrary to Inmate Rule No. 113.11.  *See* Third Misbehavior Report.  As noted above, under that

regulation, prisoners are forbidden from "possess[ing] any authorized item that has been altered

in any manner so as to change its original intent and/or purpose."  *See* 7 N.Y.C.R.R. §

270.2[B][14][ii].  A person of ordinary intelligence would readily understand that the foregoing

regulation proscribes individuals from possessing can tops that have been altered in such a

manner so as to make them capable of being used as a cutting implement.  *E.g.*, *Giano*, 54 F.3d

at 1057.

Based upon the foregoing, this Court finds that the Third Department's decision rejecting

Russell's vagueness challenge to the foregoing regulations is neither contrary to, nor represents

19

an unreasonable application of, the above-referenced Supreme Court precedent.  The Court

therefore denies his second ground for relief.

### b.    Ground Three

In his third ground, Russell argues that at the administrative proceeding below, Hearing

Officer Jones improperly denied Petitioner's request to recall as a witness at the disciplinary

hearing, a corrections officer who had already testified at such hearing, as well as an inmate

whom Russell claims would have offered favorable testimony on his behalf at that proceeding.

*See* Am. Pet., Ground Three.  Russell claims that by denying those requests, the hearing officer

denied Russell his due process rights.  *Id*.

### i.    Clearly Established Supreme Court Precedent

The right to present evidence is, "of course ... required by the Due Process Clause."

*Jenkins v. McKeithen*, 395 U.S. 411, 429 (1969) (citing *Morgan v. United States*, 304 U.S. 1, 18,

(1938)) (other citation omitted).  Subsumed within this right is the "right to call witnesses whose

testimony is 'material and favorable to his defense.'"  *Rock v. Arkansas*, 483 U.S. 44, 52 (1987)

(quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)).  In the context of prison

disciplinary hearings, however, the Supreme Court has specifically noted that this right to call

witnesses is necessarily circumscribed.  Specifically, in *Wolff v. McDonnell*, 418 U.S. 539

(1974), the Supreme Court observed:

> Ordinarily, the right to present evidence is basic to a fair hearing;
> but the unrestricted right to call witnesses from the prison
> population carries obvious potential for disruption and for
> interference with the swift punishment that in individual cases may
> be essential to carrying out the correctional program of the

20

> institution.... Prison officials must have the necessary discretion to
> keep the hearing within reasonable limits and to refuse to call
> witnesses that may create a risk of reprisal or undermine authority,
> as well as to limit access to other inmates to collect statements or
> to compile other documentary evidence. Although we do not
> prescribe it, it would be useful for the Committee to state its reason
> for refusing to call a witness, whether it be for irrelevance, lack of
> necessity, or the hazards presented in individual cases. Any less
> flexible rule appears untenable as a constitutional matter....

*Wolff*, 418 U.S. at 566.

### ii.   Contrary To, or Unreasonable Application Of, Clearly Established Supreme Court Precedent

Toward the conclusion of the subject disciplinary hearing, Hearing Officer Jones denied

Russell's request to recall the corrections officer who had issued the Second Misbehavior Report.

*See* Tier III Tr. at p. 80. Around that same time, the Hearing Officer also denied a separate

request made by Russell to call inmate Chavez to testify on Petitioner's behalf. Tier III Tr. at p.

81. In his Article 78 petition, Russell argued that Hearing Officer Jones improperly denied those

requests in violation of Russell's due process rights. *See* Article 78 Petition at p. 22.

In denying this aspect of Russell's Article 78 petition, the Appellate Division determined

that:

> the Hearing Officer did not abuse his discretion by refusing to
> permit petitioner to recall a correction officer who had been
> thoroughly cross-examined by petitioner or by refusing to allow
> petitioner to call an inmate not identified by petitioner as a witness
> until near the close of the hearing. Petitioner could not
> demonstrate that either witness could provide further relevant
> testimony.

*Russell*, 283 A.D.2d at 890. This Court must therefore determine whether that decision is either

contrary to, or represents an unreasonable application of, the Supreme Court precedent

21

referenced above.

As to Russell's challenge to the denial of his request to recall a corrections officer to provide further testimony at the disciplinary hearing, this Court notes that the *Wolff* Court specifically noted that prison officials are afforded "the necessary discretion to keep the [disciplinary] hearing within reasonable limits." *Wolff*, 418 U.S. at 566. The state court records reflect that Russell was allowed to extensively question the author of the Second Misbehavior Report when he appeared at the disciplinary hearing. *See* Tier III Tr. at pp. 36-48. Given the fact that corrections officer B. Smithers was recalled for further questioning at such hearing, this Court concurs with the Third Department that Hearing Officer Jones properly denied Russell's request to recall corrections officer Palmer to further question him about the Second Misbehavior Report.

As to Petitioner's request to call inmate Chavez, the Court notes that the subject disciplinary hearing, which was held over the course of several days, originally commenced on October 13, 1999. *See* Tier III Tr. at p. 1. Russell did not request permission to call inmate Chavez as a witness at that hearing until October 22, 1999, or nearly ten days after the first day of the disciplinary hearing. *See* Tier III Tr. at pp. 1, 81. This Court therefore endorses the Appellate Division's determination that Hearing Officer Jones properly denied Petitioner's belated request to call that witness, particularly in light of the fact that Russell was unable to demonstrate that inmate Chavez could provide relevant testimony at that hearing. *E.g.*, *Russell*, 283 A.D.2d at 890.

Since Russell has failed to demonstrate that the Third Department's denial of this claim is either contrary to, or represents an unreasonable application of, the clearly established Supreme

Court precedent referenced above, this Court denies the third claim in Russell's amended petition.

### c.    Ground Five[12]

In his fifth ground, Russell argues that insufficient evidence was presented to the hearing officer to establish Russell's guilt of the charged misconduct.  Am. Pet., Ground Five.  In support of this claim, Russell argues that corrections officer Palmer, who authored the Second Misbehavior Report, did not observe Russell – or any other individual – engage in the conduct referenced in such misbehavior report.  *Id*.  Petitioner further notes that corrections officer Palmer never identified the individual with whom Russell was alleged to have engaged in sparring or disorderly conduct in such report.  *Id.*  Petitioner additionally asserts that the evidence adduced at the disciplinary hearing failed to support the charge that Russell failed to promptly report an injury.  *Id.*[13]

### i.    Clearly Established Supreme Court Precedent

Judicial review of the written findings of a hearing officer made following a prison disciplinary hearing is limited to determining whether the hearing officer's disposition is supported by "some evidence."  *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454-55 (1985); *see also Edwards v. Balisok*, 520 U.S. 641, 648 (1997) ("revocation of good-time credits does not comport with 'the minimum requirements of procedural due process,'

---

[12]    As noted above, Russell is collaterally estopped from asserting his fourth ground for relief in this action.

[13]    The allegations contained within this claim establish that this ground is necessarily limited to a challenge concerning the finding of Russell's guilt of the allegations asserted in the Second Misbehavior Report.

23

unless the findings are supported by some evidence in the record." (quoting *Hill*, 472 U.S. at

454) (other citation and internal quotations omitted)).

### ii.   Contrary To, or Unreasonable Application Of, Clearly Established Supreme Court Precedent

In rejecting Russell's challenge regarding Hearing Officer Jones' determination of guilt,

the Appellate Division held:

> Two correction officers involved in the investigation gave detailed
> testimony concerning the circumstances leading to the filing of
> charges against petitioner.  This testimony, the misbehavior reports
> and petitioner's admission that he possessed the bent can lid in an
> area not used for cooking provide substantial evidence of
> petitioner's guilt.

*Russell*, 283 A.D.2d at 891.  That court further noted that "[c]ontrary to petitioner's assertion, the

author of a misbehavior report need not personally witness the misbehavior, provided he or she

has investigated the incident and ascertained the facts ...."  *Russell*, 283 A.D.2d at 891 (citation

omitted).

This Court must therefore determine whether these conclusions are either contrary to, or

represent an unreasonable application of, the clearly established Supreme Court precedent

referenced above.

### 1.   Unauthorized Sparring / Disorderly Conduct

As noted above, Russell notes that corrections officer Palmer was not present at the time

of the sparring / disorderly conduct referenced in the Second Misbehavior Report.[14]  Am. Pet.,

Ground Five.  Petitioner also states that such report fails to definitively identify the individual

---

[14]     Inmate Rule No. 100.15 provides that:  "[i]nmates shall not engage in
unauthorized sparring, wrestling, body-punching, or other forms of disorderly conduct."  *See*
7 N.Y.C.R.R. § 270.2[B][1][vi].

with whom Russell was alleged to have engaged in such sparring / disorderly conduct.  *Id.*

At the disciplinary hearing, corrections officer Palmer testified that while making his rounds at the correctional facility, he observed a blood-stained white rag.  Tier III Tr. at p. 36. Inmate Edwards admitted that the blood on the rag was his, Tier III Tr. at p. 37, and the injury he had sustained was consistent with having been caused by a sharp metal object such as the lid from a can.  Tier III Tr. at p. 12.  The only other inmate in the area at the time who was also bleeding was Russell, who was found in possession of a can top.  Tier III Tr. at pp. 11, 37.  That circumstantial evidence, coupled with the can lid found in Russell's possession, strongly suggested that Russell had engaged in sparring or disorderly conduct just prior to the time at which he was issued the subject misbehavior report.  In this regard, the Court notes that juries may convict **criminal** defendants on the basis of circumstantial evidence alone.  *See United States v. Irving*, 432 F.3d 401, 407 (2d Cir. 2005) (citation omitted); *Steele v. Duncan*, No. 03 Civ. 477, 2004 WL 2334074, at *3 (S.D.N.Y. Oct. 14, 2004).  Furthermore, there no requirement in the United States Constitution which mandates that a corrections officer personally witness incidents that occur within a prison in order to properly issue a misbehavior report or to testify at a prison hearing about a disciplinary report issued to an inmate.

As the Second Circuit noted in *Sira v. Morton*, 380 F.3d 57 (2d Cir. 2004), the "some evidence" standard articulated by the Supreme Court in *Hill* is "extremely tolerant and is satisfied if 'there is any evidence in the record that supports' the disciplinary ruling."  *Sira*, 380 F.3d at 69 (quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)).[15]

---

[15]     That standard does, however, require that some "reliable evidence" be introduced to support the charge.  *Sira*, 380 F.3d at 69 (citing *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004) (other citation omitted)).

Based upon the foregoing, this Court concludes that the evidence presented at the disciplinary hearing concerning Russell's guilt of violating Inmate Rule No. 100.15 was more than sufficient to surpass the relatively modest threshold established in *Hill*.

## 2.   Failure to Promptly Report Injury

Petitioner next asserts, without any specific factual argument, that the evidence presented at the disciplinary hearing did not support the charge that Russell failed to promptly report an injury.[16] Am. Pet., Ground Five.  However, the evidence adduced at that hearing established that although Russell was bleeding, he did not voluntarily report the injury he sustained to his finger to corrections officers.  *E.g.*, Tier III Tr. at pp. 11, 37.  In fact, Russell himself candidly admitted at his disciplinary hearing that he "never left the area on [his] own," but rather was escorted from his unit by corrections officers.  Tier III Tr. at p. 76.  Thus, there was considerable evidence offered at the disciplinary hearing to demonstrate Russell's guilt of violating Inmate Rule 118.23.

In sum, Petitioner has not established that the Appellate Division's decision denying his challenge concerning the evidence adduced at his disciplinary hearing, *Russell*, 283 A.D.2d at 891, is either contrary to, or represents an unreasonable application of, the above-referenced Supreme Court precedent.  Therefore, the Court denies his fifth ground for relief.

## d.   Ground Seven

Advancing to Russell's seventh ground for relief, the Court notes that in such claim, Petitioner argues that Hearing Officer Jones' determination of Russell's guilt was the product of bias on the part of that officer.  In support of this assertion, Russell contends that he was found

---

[16]   The relevant prison regulation provides that "An inmate shall promptly report illness or injury to a facility employee."  *See* 7 N.Y.C.R.R. § 270.2[B][19][v].

guilty of all charges contained in the Second Misbehavior Report despite the fact that corrections officer Palmer admitted during the disciplinary hearing that he had not witnessed Russell engage in the misconduct alleged in that report.  Am. Pet., Ground Seven.  Petitioner further notes that he was found guilty of possessing a weapon and an altered item notwithstanding the evidence which he claims established that he was permitted to possess the claimed contraband and the fact that he was issued a "wrong" misbehavior report.  Am. Pet., Ground Seven.  Petitioner argues that Hearing Officer Jones' findings of guilt were necessarily the result of a "[b]ias[ed] tier hearing Deputy Superintendent."  Am. Pet., Ground Seven.

### i.   Clearly Established Supreme Court Precedent

In the criminal context, to establish that a judge has engaged in misconduct sufficient to warrant redress, a party must typically demonstrate that the judge displayed "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994); *see also Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (to succeed on a judicial misconduct claim, a party must "overcome a presumption of honesty and integrity in those serving as adjudicators").[17]  Additionally, the Supreme Court has observed that although the due process requirements applicable to prison disciplinary hearings "are in many respects less demanding than those for criminal prosecution ... they are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence." *Balisok*, 520 U.S. at 647.

### ii.   Contrary To, or Unreasonable Application Of, Clearly

---

[17]     In reviewing a judicial misconduct claim, courts are to presume that public officials have "properly discharged their official duties." *See Bracy v. Gramley*, 520 U.S. 899, 909 (1997) (internal quotations and citations omitted).

**Established Supreme Court Precedent**

This Court's review of the transcript of the subject disciplinary hearing belies Russell's claim that Hearing Officer Jones was biased against him.  To the contrary, the transcript of that hearing reflects that Russell was allowed to freely question corrections officers Smithers and Palmer at such hearing.  *See* Tier III Tr.  Furthermore, Hearing Officer Jones properly denied Russell's request to call inmates Williams and Parker due to their refusal to testify.  *See* Tier III Tr. at pp. 6-7.  Additionally, as noted above in conjunction with Petitioner's third ground for relief, the hearing officer properly declined Russell's request to recall corrections officer Palmer as well as his belated requested to call inmate Chavez to testify on Petitioner's behalf.  *E.g.*, Tier III Tr. at pp. 80-81.  Finally, the transcript of the disciplinary hearing establishes that Russell was afforded ample opportunities throughout that proceeding to articulate his defense to the charges.  *See* Tier III Tr.

In sum, Russell has not demonstrated that Hearing Officer Jones possessed a high degree of favoritism or antagonism during the course of the disciplinary hearing so as to make a fair judgment relating to that hearing impossible.  Nor has he established that Hearing Officer Jones improperly suppressed evidence of Russell's innocence of the subject charges.  Petitioner has therefore wholly failed to demonstrate that the Third Department's decision denying this aspect of his Article 78 petition, *see Russell*, 283 A.D.2d at 891, is either contrary to, or represents an unreasonable application of, the above-cited Supreme Court precedent.  The Court therefore denies his seventh ground for habeas relief.

### e.         **Unexhausted Claim**

Returning to Russell's sixth ground for relief, the Court notes that in that claim, Petitioner

states that newly discovered evidence establishes his innocence of the subject disciplinary charges.[18]  *See* Am. Pet., Ground Six.  Specifically, Russell claims that the testimony of a corrections officer at the criminal proceeding below, as well as a response Petitioner received from the Attorney General in conjunction with requests for admission served on the Attorney General in another civil action, establishes that Russell is innocent of the charges raised in the misbehavior reports.  Am. Pet., Ground Six.

However, nothing before the Court suggests that Russell ever asserted the present claim in the state courts.[19]  Although Respondents do not argue that this Court cannot consider this claim due to Petitioner's failure to exhaust, *see* Resp. Mem., the Court notes that the habeas corpus statute clearly provides that a state's failure to raise exhaustion as a defense to a charge does not operate as a waiver of such defense.  *See* 28 U.S.C. § 2254(b)(3) ("[a] state shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement").  Accordingly, federal district courts may properly *sua sponte* address a Petitioner's failure to exhaust in the absence of Respondents' express waiver of the exhaustion requirement.  *See Lurie v. Wittner*, 228 F.3d 113, 123 (2d Cir. 2000); *King v. Mantello*, No. CV 98-7603, 2002 WL 32100251, at

---

[18]     Russell actually states that new evidence he has submitted to the court "supports petitioner[']s innocence of the charg*e*" (emphasis added).  However, since the present petition challenges Hearing Officer Jones' determinations as to both the Second and Third Misbehavior Reports, this Court will liberally construe Russell's sixth ground for relief as one which alleges that Russell is innocent of the charges alleged in both such misbehavior reports.

[19]     A federal district court "'may not grant the habeas petition of a state prisoner unless it appears that the applicant has exhausted the remedies available in the courts of the State ....'"  *Shabazz v. Artuz*, 336 F.3d 154, 160 (2d Cir. 2003) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (other citation omitted)).

*15 n.8 (E.D.N.Y. Nov. 19, 2002), *adopted*, 2003 WL 1873618 (E.D.N.Y. Apr. 11, 2003),

*appeal dismissed*, *King v. Mantello*, No. 03-2350 (2d Cir. July 9, 2003).

Under the AEDPA, a federal district court now has the authority to deny (but not grant)

an unexhausted claim on the merits, rather than require exhaustion.[20]  *See* 28 U.S.C. § 2254(b)(2)

("[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the

failure of the applicant to exhaust the remedies available in the courts of the State"); *see also*

*Aparicio v. Artuz*, 269 F.3d 78, 91 n.5 (2d Cir. 2001).  While the Second Circuit has not yet

articulated the appropriate standard to be utilized in determining whether an unexhausted claim

should be denied on the merits, *see*, *e.g.*, *McFadden v. Senkowski*, 421 F. Supp. 2d 619, 621

(W.D.N.Y. Mar. 24, 2006), those district courts that have addressed the question appear to utilize

two somewhat distinct standards.  Some courts have reviewed unexhausted claims to determine

if they were "patently frivolous."  *McFadden*, 421 F. Supp. 2d at 621; *Lewis v. Bennett*, 328 F.

Supp. 2d 396, 405-06 (W.D.N.Y. 2004) (collecting cases); *Wilson v. Goord*, No. 00 CIV.4849,

2004 WL 226149, at *3 (S.D.N.Y. Feb. 6, 2004); *Butti v. Giambruno*, No. 02 CIV.3900, 2003

WL 21518837, at *3 (S.D.N.Y. July 2, 2003).  A minority of courts have opined that such claims

should be analyzed to determine if it is "perfectly clear that the petitioner does not raise even a

colorable federal claim."  *See Naranjo v. Filion*, No. 02CIV.5449, 2003 WL 1900867, at *8

(S.D.N.Y. Apr. 16, 2003) (noting the diverging views on this issue without deciding which

standard is appropriate); *Rosario v. Bennett*, No. 01 CIV. 7142, 2002 WL 31852827, at *17

(S.D.N.Y. Dec. 20, 2002); *Hernandez v. Lord*, 00 Civ. 2306, 2000 WL 1010975, at *4-5 & n. 8

---

[20]      Prior to the enactment of the AEDPA, a federal court was required to dismiss
petitions containing both exhausted and unexhausted claims.  *Rose v. Lundy*, 455 U.S. 509,
510 (1982).

30

(S.D.N.Y. July 21, 2000); *see also Granberry v. Greer*, 481 U.S. 129, 135 (1987) (pre-AEDPA

case holding that "if it is perfectly clear that the applicant does not raise even a colorable federal

claim, the interests of the petitioner, the warden, the state attorney general, the state courts, and

the federal courts will all be well served" if the district court denies the habeas petition even

where the state fails to raise the exhaustion defense).

Since the Court concludes that Russell's sixth ground for relief must be dismissed under

either standard, this Court need not determine which of the above-referenced tests should be

applied in considering Russell's unexhausted sixth ground for relief.

Long ago, the Supreme Court held that "the existence merely of newly discovered

evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas

corpus." *See Townsend v. Sain*, 372 U.S. 293, 317 (1963).  This bedrock principle of federal

habeas jurisprudence was reiterated by the Supreme Court in *Herrera v. Collins*, 506 U.S. 390

(1993), where the Court opined that:

> Claims of actual innocence based on newly discovered evidence
> have never been held to state a ground for federal habeas relief
> absent an independent constitutional violation occurring in the
> underlying state criminal proceeding.

*Herrera*, 506 U.S. at 400.[21]  Thus, a federal district court is prohibited from "mak[ing] its own

subjective determination of guilt or innocence." *Jackson v. Virginia*, 443 U.S. 307, 319 n.13

(1979); *see also Medina v. McGinnis*, No. 04 CIV.26, 2004 WL 2088578, at *26 (S.D.N.Y. Sept.

20, 2004) ("newly discovered evidence relevant to the guilt of a state prisoner is not a ground for

---

[21]     The *Herrera* court noted that this rule "is grounded in the principle that
federal habeas courts sit to ensure that individuals are not imprisoned in violation of the
Constitution – not to correct errors of fact." *Herrera*, 506 U.S. at 400 (citing *Moore v.
Dempsey*, 261 U.S. 86, 87-88 (1923)).

relief on federal habeas corpus"); *White v. Keane*, 51 F. Supp. 2d 495, 502 (S.D.N.Y. 1999)

(district courts "have absolutely no power to grant habeas corpus relief based upon new evidence,

even if that evidence might establish petitioner's actual innocence") (citing *Herrera*, 506 U.S. at

400); *Smithwick v. Walker*, 758 F. Supp. 178, 184 (S.D.N.Y.) ("[e]vidence which goes only to

the guilt or innocence of petitioner is not sufficient to require habeas corpus relief."), *aff'd*, 948

F.2d 1278 (2d Cir. 1991); *Cady v. United States*, No. 98-CV-33, 1998 WL 743719, at *4

(N.D.N.Y. Oct. 15, 1998) (McAvoy, C.J.) ("our habeas jurisprudence makes clear that a claim of

actual innocence is not itself a constitutional claim, but instead a gateway through which a habeas

petitioner must pass to have his otherwise constitutional claims considered on the merits")

(internal quotation omitted) (citing *Herrera*, 506 U.S. at 404); *Mapp v. Clement*, 451 F. Supp.

505, 511 (S.D.N.Y.) ("newly discovered evidence only warrants habeas corpus relief where it

bears on the constitutionality of the applicant's detention; the existence merely of newly

discovered evidence relevant to the guilt of a state petitioner is not a ground for relief on federal

habeas corpus") (internal quotation and citation omitted), *aff'd mem.*, 591 F.2d 1330 (2d Cir.

1978).

Russell's sixth ground claims that he is entitled to habeas relief because newly discovered

evidence suggests that he is innocent of the charges asserted in the misbehavior reports.  Am.

Pet., Ground Six.  However, since this ground does not assert an independent constitutional

challenge to his conviction but rather merely claims that such newly discovered evidence

demonstrates that Russell is not guilty of the subject misbehavior reports, this unexhausted claim

is patently frivolous.  The Court alternatively concludes that it is perfectly clear that Russell has

not raised even a colorable ground for federal habeas relief in this claim.  *E.g. Townsend*, 372

U.S. at 317; *Herrera*, 506 U.S. at 400.  Therefore, his sixth ground for relief is denied.

**WHEREFORE, IT IS HEREBY**

**ORDERED**, that Russell's amended habeas petition (Dkt. No. 6) is **DENIED** and

**DISMISSED**, and it is further

**ORDERED**, that the Clerk of Court serve a copy of this Memorandum-Decision and

Order upon the parties to this action by regular or electronic mail, and it is further

**ORDERED**, that the state court records be returned directly to the Attorney General at

the conclusion of these proceedings (including any appeal of this Memorandum-Decision and

Order filed by any party).

**IT IS SO ORDERED.**

Dated:         May 31, 2006
               Albany, New York

Lawrence E. Kahn
U.S. District Judge